UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas Spang,　　　　　　　　　　　　　　　　　Case No. 22-cv-1294 (WMW/LIB)

　　　　　　Petitioner,

　　v.　　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

B. Eischen,
*FPC-Duluth Warden*,

　　　　　　Respondent.

　　　　This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1 and upon Petitioner Thomas Spang's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[1]

　　　　For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED without prejudice**.

**I.　　Background**

　　　　On September 21, 2016, Petitioner was arrested by state law enforcement authorities in Fremont County, Wyoming, based on law enforcement's belief that Petition was then violating state law. (Exhibit B [Docket No. 13-2]). Thereafter, Petitioner pled guilty to one count of Unlawful Delivery of Methamphetamine in violation of Wyoming state law, and on March 30,

---

[1] Upon review of the present record, the Court finds that no hearing is necessary in this action. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983) (observing that dismissal of a "habeas petition without a hearing is proper . . . where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record"). A hearing on the present Petition would not aid the Court in its consideration of Petitioner's claims.

2017, Petitioner was remanded to the custody of the Wyoming state officials and sentenced to a term of imprisonment of "not less than 3 years, nor more than 8 years with credit given for time served" in the amount of 191 days. (Judgment and Sentence [Docket No. 13-3]).

On June 22, 2017, an Indictment was filed against Petitioner in the United States District Court for the District of Montana based on conduct which began in 2012 and continued until September 20, 2016. United States v. Spang, No. 1:17-cr-80 (SPW), Indictment [Docket No. 2] (D. Mont. June 22, 2017). On July 7, 2017, the United States Marshals took Petitioner into temporary custody pursuant to a Writ of Habeas Corpus ad Prosequendum issued by the United States District Court for the District of Montana. United States v. Spang, No. 1:17-cr-80 (SPW), Writ [Docket No. 7] (D. Mont. July 7, 2017); USMS Prisoner Tracking System Exhibit [Docket No. 13-5].

On November 22, 2017, Petitioner pled guilty in the United States District Court for the District of Montana to one count of Conspiracy to Possess with Intent to Distribute Methamphetamine. United States v. Spang, No. 1:17-cr-80 (SPW), Minute Entry [Docket No. 32] (D. Mont. Nov. 22, 2017). On March 28, 2018, Petitioner was sentenced by the U.S. District Court to an 87-month term of imprisonment which was ordered to run concurrently with the sentence he had received in Wyoming state court. United States v. Spang, No. 1:17-cr-80 (SPW), Judgment [Docket No. 40] (D. Mont. March 28, 2018). Petitioner's term of Federal imprisonment was to be followed by supervised release for a term of five years. (Id.).

On May 4, 2018, Petitioner was returned to the custody of Wyoming state authorities. (USMS Prisoner Tracking System Exhibit [Docket No. 13-5]). Petitioner remained in the custody of Wyoming state authorities until January 28, 2022, when Petitioner completed the term

of imprisonment imposed upon him by the Wyoming state court. (USMS Prisoner Tracking System Exhibit [Docket No. 13-5]; Wyoming DOC Data Sheet [Docket No. 13-7]).

Upon the satisfaction of Petitioner's Wyoming state court sentence, on January 28, 2022, state authorities transferred Petitioner to the custody of the United States Marshal pursuant to a detainer. (USMS Prisoner Tracking System Exhibit [Docket No. 13-5]). Petitioner remains in the custody of federal authorities. (USMS Prisoner Tracking System Exhibit [Docket No. 13-5]).

On March 22, 2022, Petitioner arrived at the Federal Prison Camp located in Duluth, Minnesota ("FPC Duluth") where he presently remains. (Pet. [Docket No. 1]; Inmate History [Docket No. 14-2]).

On April 11, 2022, Petitioner was reviewed for Federal First Step Act eligibility, and he was found to be qualified. (Inmate History First Step [Docket No. 14-3]). Petitioner was awarded 15 days of First Step Act time credits. (Id.). Petitioner's projected release is currently December 6, 2023, pursuant to First Step Act release. (Public Information Inmate Data [Docket No. 12-1]).

On May 11, 2022, Petitioner initiated the present action by filing his Petition. [Docket No. 1]. Through this action, Petitioner seeks an Order of this Court requiring the Bureau of Prisons to calculate and apply the First Step Act time credits earned by Petitioner based on the length of Petitioner's entire term of imprisonment regardless of whether he was in state custody or federal custody; to immediately apply the full 391 days of Good Conduct Time credits to Petitioner's sentence computation, and to immediately apply all earned time conduct credits to his "sentence percentage satisfaction." (Pet. [Docket No. 1]).

**II.    Standard of Review**

"Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Under § 2241, a

3

writ of habeas corpus shall not extend to any individual unless the individual "is in custody in violation of the Constitution or laws or treaties of the United States." Id. Through a § 2241 petition, a prisoner may challenge the execution of his sentence in the District in which he is incarcerated. See Id.

**III.   Discussion**

As discussed above, Petitioner seeks an Order of this Court requiring the Bureau of Prisons (hereinafter "BOP") to yet again calculate and immediately apply additional First Step Act time credits earned by Petitioner based on the length of Petitioner's entire term of imprisonment regardless of whether he was in state custody or federal custody; to immediately apply the full 391 days of Good Conduct Time credits to Petitioner's sentence computation; and to immediately apply all earned time credits to his "sentence percentage satisfaction." (Pet. [Docket No. 1]). In support of these requests, Petitioner asserts that the Bureau of Prisons has applied First Step Act time credits and Good Conduct Time credits in a manner inconsistent with federal law, including the First Step Act itself. (Id.). Although the BOP applied some First Step Act credits to Petitioner's sentence calculation, Petitioner argues that the BOP miscalculated those credits in a manner inconsistent with the First Step Act, and the BOP does not intend to recalculate his sentence within a reasonable time. (Reply [Docket No. 18]). Specifically, Petitioner challenges the BOP's decision to not award him First Step Act time credit for the time he served in state custody. (Id.).

Respondent argues that the present Petition should be denied because Petitioner failed to exhaust his administrative remedies. (Response [Docket No. 11] at 1, 13–15). In the alternative, Respondent argues that even if this Court considers the merits of the Petitioner's claim, the present Petition should be denied because Petitioner's request to require the BOP to immediately

calculate his First Step Act time credits is moot, as that calculation had already been conducted prior to filing of the current Petition; because Petitioner's request to have the BOP immediately apply Petitioner's First Step Act time credits is premature; and because Petitioner's request to have the BOP immediately apply his Good Conduct Time credits is also premature. (Id. at 15–20).

A. Exhaustion

It is well established that a federal prisoner seeking execution of sentence relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241, like Petitioner here, must first exhaust the administrative remedies available to him. See Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). A prisoner's exhaustion of administrative remedies is a multi-step process which must be completed in its entirety before a prisoner is deemed to have exhausted his administrative remedies. See, e.g., Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891, at *1 (D. Minn. Feb. 17, 2017), report and recommendation adopted, 2017 WL 1131884 (D. Minn. Mar. 24, 2017); Arroyo v. Fikes, No. 21-cv-2489 (KMM/BRT), 2022 WL 2820405, at *3 (D. Minn. May 5, 2022), report and recommendation adopted, 2022 WL 2819577 (D. Minn. July 19, 2022).[2]

---

[2] The first step in the administrative remedies process is for the prisoner to seek informal resolution with prison staff on an Informal Resolution Form known as a BP-8 form. See 28 C.F.R. § 542.13. If a prisoner is unable to resolve the issue through informal resolution, the prisoner must file a formal Request for Administrative Remedy ("BP-9 form") at the institutional level within twenty days following the date on which the basis for the request occurred. See 28 C.F.R. § 542.14. If the prisoner is dissatisfied with the warden's response to the BP-9, the prisoner may then appeal the denial of his request to the Regional Director through the filing of a Regional Office Administrative Remedy Appeal form ("BP-10"). See 28 C.F.R. § 542.15. If the prisoner remains dissatisfied after the Regional

The exhaustion requirement is not jurisdictional. See Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007). It is, however, generally enforced absent circumstances which justify an exception. See, e.g., Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891 (D. Minn. Feb. 17, 2017) (denying habeas petition for failure to exhaust all available administrative remedies); Knox v. United States, No. 16-cv-879 (WMW/KMM), 2016 WL 6022940 (D. Minn. Oct. 13, 2016) (same); Aguilar v. United States, No. 15-cv-487 (SRN/JSM), 2015 WL 5719166, at *2 (D. Minn. Sept. 29, 2015); United States v. Thompson, 297 F. App'x 561, 562 (8th Cir. 2008).

The exceptions to the exhaustion requirement for habeas petitioners are limited to specific circumstance, such as when requiring a habeas petitioner to exhaust all available administrative remedies would be "undoubtedly" futile and serve no useful purpose. See Aguilar, 2015 WL 5719166, at *2. Courts have also excused the exhaustion requirement when the issues raised in the action are time-sensitive and may become moot without expeditious judicial resolution. See Simon v. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *3–4 (D. Minn. Mar. 10, 2016); O'Hara v. Rios, No. 8-cv-5160 (JRT/JJK), 2009 WL 3164724, at *4 (D. Minn. Sept. 28, 2009).

In the present case, the undersigned is cognizant that Petitioner contends that he is entitled to immediate relief in the form of either being released from the custody of the BOP or being transferred to home confinement. Although he has not yet completed the administrative remedies process, Petitioner asserts that he has started seeking administrative remedies through the BOP. (Reply [Docket No. 18] at 1). If the Court were to require Petitioner to fully exhaust his administrative remedies before returning to file a new habeas petition, it would deny Petitioner

---

Director's response, the prisoner may appeal the denial of his request to the Office of the General Counsel through the filing of a Central Office Administrative Remedy Appeal ("BP-11"). See Id. To fully exhaust his administrative remedies, a federal prisoner must complete each of these steps.

the opportunity to receive meaningful relief if his claims are found to be meritorious. The time-sensitive nature of Petitioner's claims, combined with the relative ease of resolving said claims, persuades the undersigned to recommend that the Court excuse the exhaustion requirement and address the substance of Petitioner's claims.

### B. Merits

As discussed above, Petitioner seeks an Order of this Court requiring the BOP to immediately release Petitioner from the BOP's custody. (Pet. [Docket No. 1] at 8) (requesting "immediate release"). In support of this request, Petitioner contends that the proper calculation of his First Step Act time credits and his Good Conduct Time credits to include all state imprisonment time would result in his release date having already passed. As for his First Step Act time credits, Petitioner contends the BOP improperly failed to provide him with First Step Act time credits for the time he was incarcerated in the custody of the State of Wyoming. In regard to his Good Conduct Time credits, Petitioner only conclusorily asserts that his Sentence Monitoring Computation Data sheet shows a total of 391 days of credit but only 216 days have been applied. In the alternative to release from BOP custody, Petitioner contends that even if the recalculation of his First Step Act time credits and immediate allocation of his Good Conduct Time credits do not result in a release date which has already passed, they will result in him having already "served 90% of his time," and thus, he would be entitled to be "immediately direct[ed]" to home confinement. (Reply [Docket No. 18] at 4; Pet. [Docket No. 1]).

The Court finds each of these arguments to be unpersuasive. The Court discusses each of Petitioner's claims in turn.

### i. First Step Act Claim

On December 21, 2018, the First Step Act ("FSA") became law. See 18 U.S.C. § 3632. The FSA contains various carceral reforms, including the potential reduction of sentences for certain federal inmates through the accumulation of "time credits." See Id. As relevant to the present action, the FSA provides that "[a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" at a rate described by statute. 18 U.S.C. § 3632(d)(4). "A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to the date of enactment of this subchapter" or "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B). Once earned, First Step Act time credits are "applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C).

As observed above, the BOP updated Petitioner's sentence computation to reflect the BOP's calculation that Petitioner had earned 15 days of First Step Act time credits. Petitioner asserts that he is entitled to 660 days of additional First Step Act time credits because he should receive these time credits for the period of time he was in the custody of the State of Wyoming. Petitioner is incorrect, and his assertions contradict the text of First Step Act itself.

In this case, Petitioner entered the custody of the State of Wyoming on September 21, 2016, and he later pled guilty to the violation of Wyoming state law. While Petitioner was serving his sentence in the custody of the State of Wyoming, a federal Indictment was filed against Petitioner in the United States District Court for the District of Montana, and on July 7, 2017, the United States Marshals took Petitioner into temporary custody pursuant to a federal

Writ of Habeas Corpus ad Prosequendum. On March 28, 2018, the United States District Court for the District of Montana sentenced Petitioner to an 87-month term of federal imprisonment to run concurrently with his state sentence when he was returned to the custody of Wyoming state authorities on May 4, 2018, where he remained until January 28, 2022, when he completed his state term of imprisonment. Thereafter, Petitioner was transferred back to the custody of the United States Marshal. On March 22, 2022, Petitioner arrived at FPC Duluth where he presently remains.

Petitioner has received First Step Act time credits for the period of time after March 22, 2022, when he arrived at FPC Duluth. He, however, contends that he has a right to have his sentence computation recalculated to reflect he also earned First Step Act time credits for the entire period of his prior incarceration. Petitioner's assertion is unpersuasive for several reasons.

As an initial matter, Petitioner's request is directly contradicted by the text of the First Step Act which provides that a prisoner may not earn First Step Act time credits during official detention before the date that the prisoner's sentence commences which is defined as the date the prisoner is received into custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served. 18 U.S.C. § 3632(d)(4)(B) (citing 18 U.S.C. § 3585(a)).[3] Here, Petitioner did not arrive at FPC Duluth until March 22, 2022, and he thus cannot accrue First Step Act time credits for any period of time prior to March 22, 2022.

---

[3] Although 18 U.S.C. § 3585(b) provides circumstances in which a prisoner may receive computational credit toward the service of a term of imprisonment for time he has spent in official detention before the date the federal sentence commences, this provision addresses only the calculation of a term of imprisonment not the date said sentence commences. The relevant First Step Act provisions discussed herein are concerned only with the date a sentence commences. Moreover, even assuming solely for the sake of argument that § 3585(b) could be used to alter the date a sentence is said to have commenced, it would not apply to Petitioner because the time Petitioner spent in official detention prior to his arrival at FPC Duluth was credited toward the sentenced imposed upon him by the State of Wyoming. See 18 U.S.C. § 3585(b) (providing that a prisoner may be given credit toward the service of a term of imprisonment for time the prisoner spent in official detention before the date the federal sentence commences if certain factors are met and the time has not been credited against any other sentence).

Petitioner contends that at a minimum he should be permitted to accrue First Step Act time credits for the period of time between July 7, 2017, and May 4, 2018, during which he was in the pretrial custody of the United States Marshals for the pendency of his criminal prosecution in federal court. Aside from Petitioner's assertion here being in contradiction to § 3632(d)(4)(B) as discussed above, there exists yet still other reasons Petitioner's assertion is incorrect. First, this period of time is prior to the enactment of the First Step Act, and the First Step Act expressly prohibits a prisoner from earning First Step Act time credits for any period of time prior to the enactment of the First Step Act. 18 U.S.C. § 3632(d)(4)(B)(i).[4] Second, to the extent Petitioner argues that he is entitled to accrue First Step Act time credits for this period of time because he was in the custody of federal authorities rather than state authorities, Petitioner conflates the concept of physical custody and custody for the purposes of sentence computation. Although Petitioner was in the temporary physical pretrial custody of the United States Marshals from July 7, 2017, until May 4, 2018, Petitioner remained in the primary custody of the State of Wyoming for the purposes of sentence computation. See, e.g., Roberts v. United States, No. 20-cv-2367 (SRN/ECW), 2021 WL 2077645, at *7 (D. Minn. May 6, 2021) (citing cases and explaining that, under the primary jurisdiction doctrine, when a state prisoner is transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum that prisoner remains in the primary jurisdiction of the state authorities and is only "on loan" to the federal authorities"), report and recommendation adopted, 2021 WL 2076220 (D. Minn. May 24, 2021); Hogate v. Starr, No. 20-cv-1295 (PAM/TNL), 2021 WL 3476714, at *7 (D. Minn. July 2, 2021), report and recommendation adopted, 2021 WL 3472651 (D. Minn. Aug. 6, 2021).

---

[4] This same logic offers another reason that Petitioner is not entitled to the accrual of First Step Act time credits during his incarceration prior to temporary transfer to the United States Marshals on July 7, 2017.

10

For all the reasons discussed above, the Court concludes that Petitioner is not entitled to have the BOP recalculate his sentence computation to reflect his having accrued First Step Act time credits prior to March 22, 2022.

### ii. Good Conduct Time Claim

Petitioner also conclusorily asserts that he is entitled to have approximately 175 additional days of Good Conduct Time credits added into his sentence computation. However, Petitioner does not offer any specific, substantive argument in support of this request. (See Pet. [Docket No. 1]). The entirety of Petitioner's assertion related to his Good Conduct Time is as follows: "My total Good Credit Time of 15% of my sentence—accrued the day of my sentencing, has not yet been fully applied. See page two of 'Computation Data'—only 216 of my total 391 days have been credited to my sentence percentage satisfaction. See attached." (Id. at 8). In his Request for Relief, Petitioner merely states, "apply my full Good Credit Time." (Id.). Petitioner appears to be referencing his Sentence Monitoring Computation Data sheet which provides that he has a "TOTAL GCT EARNED AND PROJECTED" of 391 days with a "TOTAL GCT EARNED" of 216 days. (Sentence Monitoring Computation Data sheet [Docket No. 1-1]). Petitioner does not object to the BOP's calculation of the amount of Good Conduct Time credits; Petitioner merely challenges the fact that his projected "391 days" of total Good Conduct Time have not already been "fully applied" to his sentence computation.

The First Step Act altered the method for calculating Good Conduct Time credits. 18 U.S.C. § 3624(b)(1). As amended by the First Step Act, § 3624(b)(1) now provides that a prisoner may earn up to 54 days of Good Conduct Time credits toward the service of the prisoner's sentence for each year of the prisoner's sentence imposed by the court. 18 U.S.C. § 3624(b)(1). A prisoner may lose Good Conduct Time credits if he becomes subject to

disciplinary action. Id. And prisoner's Good Conduct Time credits do not "vest" until the date the prisoner is released from custody. 18 U.S.C. § 3624(b)(2).

Petitioner asserts that he is entitled to 391 days of Good Conduct Time now rather than the 216 days he believes the BOP has assessed. Petitioner's assertion is, however, based on a misreading of his Sentence Monitoring Computation Data sheet.

The BOP's assessment of 391 days as the "TOTAL GCT EARNED AND PROJECTED"[5] means that the BOP has determined that the length of Petitioner's sentence will entitle him to 391 days of Good Conduct Time. This is the exact relief Petitioner requests. The line item on Petitioner's Sentence Monitoring Computation Data sheet reflecting 216 days of "TOTAL GCT EARNED"[6] merely indicates that the amount of time Petitioner has served (up to the date the Sentence Monitoring Computation Data sheet is printed) of his total sentence provides him with 216 of his 391 total possibly days. In short, Petitioner requests the BOP calculate his Good Conduct Time at a rate of 54 days for each year of his imposed sentence, and the BOP has done so.

To the extent Petitioner argues that the 391 days should be immediately applied to his "Percent of Statutory Term Served" calculation or his "Statutory Release Date Projected," that too is already completed. It is the 391 days of "TOTAL GCT EARNED AND PROJECTED" which is used in calculating Petitioner's "Percent of Statutory Term Served" calculation and his "Statutory Release Date Projected." (Fanello Decl. [Docket No. 13] ¶ 17). The 216 days of "TOTAL GCT EARNED" is not used in these calculations. (Id.).

---

[5] The "TOTAL GCT EARNED AND PROJECTED" is the total possible time a prisoner could earn on his sentence less any Good Conduct Time he previously lost as the result of becoming subject to disciplinary sanctions. (Fanello Decl. [Docket No. 13] ¶ 17).
[6] The "TOTAL GCT EARNED" represents the actual amount of Good Conduct Time a prisoner has earned as of the specific date the sentence computation sheet is printed. (Fanello Decl. [Docket No. 13] ¶ 17).

For all the reasons discussed above, the Court concludes that Petitioner has failed to demonstrate that he is entitled to any relief related to his Good Conduct Time credits.

### iii. Home Confinement

As observed above, Petitioner contends that even if he is not entitled to immediate release, he is still entitled to be transferred to home confinement. Petitioner's sole argument in support of this contention, however, is that even if the recalculation of his First Step Act time credits and the immediate allocation of his full, projected Good Conduct Time credits do not result in a release date which has already passed, they will result in him having "served 90% of his time." Therefore, he contends he is entitled to be "immediately direct[ed]" to home confinement. (Reply [Docket No. 18] at 4; Pet. [Docket No. 1]).

The Court, having determined that Petitioner is not entitled to have the BOP recalculate his First Step Act credits or alter his Good Conduct Time credits, need not repeat that discussion here. It is sufficient to state that Petitioner has proffered no persuasive argument that he is entitled to an Order of this Court directing the BOP to immediately transfer him to home confinement.

Thus, for all the reasons already discussed above, the Court concludes that Petitioner has failed to demonstrate that he is entitled to any relief related to his request to be transferred to home confinement.

Moreover, being transferred to home confinement is <u>not</u> relief which may be properly sought through a habeas petition. "[T]he heart of habeas corpus" relief is "immediate release or a speedier release from" confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 (1973).[7]

---

[7] The Eighth Circuit Court of Appeals has specifically concluded that habeas petitions are <u>not</u> the proper vehicle to remedy constitutional claims relating to the conditions of confinement. See Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014) (citing Kruger v. Ericksen, 77 F.3d 1071 (8th Cir. 1996)). In the Eighth Circuit, a habeas petitioner under § 2241 can <u>only</u> challenge the fact or duration of confinement. See, e.g., Spencer v. Haynes, 774 F.3d 467 (8th Cir.

13

Petitioner's request to be transferred to home confinement does not seek either immediate release from imprisonment or a speedier release from a term of imprisonment. Instead, Petitioner's request to be transferred to home confinement merely seeks to be transferred to a different place or a different condition of incarceration: home confinement.[8] Such relief may not properly be sought in a habeas petition.

III.   **Conclusion**

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED without prejudice.**

Dated: January 26, 2023                                                                 s/Leo I. Brisbois
                                                                                        Hon. Leo I. Brisbois
                                                                                        United States Magistrate Judge

---

2014); Heck v. Humphrey, 512 U.S. 477, 481 (1994); Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996). Challenges to the conditions of confinement cannot be addressed in habeas proceedings. Mendez v. United States, No. 12-cv-28 (ADM/FLN), 2012 WL 1110138, at *2–3 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 1110125 (D. Minn. Apr. 3, 2012).

[8] Home confinement is, indeed, considered a place of confinement or imprisonment. See, e.g., United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021) (discussing home confinement as a place of imprisonment noting that "the district court correctly held that it did not have authority to change [defendant's] place of imprisonment to home confinement"); see also Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004). A prisoner is transferred to home confinement not released to home confinement because home confinement is a place of incarceration. See United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021). Being transferred to home confinement is not a "release" from incarceration or imprisonment. The Courts of this District, and the Eighth Circuit Court of Appeals, have consistently discussed home confinement, community confinement centers, and residential re-entry centers as places of confinement, incarceration, and imprisonment. Home confinement is a place of confinement or imprisonment; to hold otherwise would upend a plethora of well-established Eighth Circuit precedent. See, e.g., United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021); Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004); Pollock v. Marske, No. 21-2570, 2022 WL 1218640 (8th Cir. 2022).

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).